# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* KATY KENNEDY and FRANK A. MATOS, THE STATE OF ILLINOIS *ex rel.* KATY KENNEDY and FRANK A. MATOS, and KATY KENNEDY, individually <br><br> Plaintiffs, <br><br> vs. <br><br> AVENTIS PHARMACEUTICALS, INC., and PHARMANETICS, INC. <br><br> Defendants. | Case No. 03-C-2750 <br><br> Honorable Matthew F. Kennelly |

## DEFENDANT AVENTIS PHARMACEUTICALS, INC.'s
## MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

# TABLE OF CONTENTS

**INTRODUCTION**……………………………………………………………………… 1

**FACTUAL BACKGROUND**……………………………………………………………… 3

   A.  Lovenox……………………………………………………………………………. 3

   B.  PharmaNetics' ENOX test and ensuing litigation…………………………………. 4

   C.  Relators' allegations and the Government's decision not to intervene………………. 6

**ARGUMENT**…………………………………………………………………………...... 8

   A.  The Court lacks subject-matter jurisdiction over Relators' claims arrising from their off-label promotion and false statements because of the public-disclosure bar………….. 8

      1.  The facts underlying Relators' allegations were publicly disclosed……………… 8

      2.  Relators' allegations are "based upon" the publicly disclosed information………. 9

      3.  Relators are not an "original source" of their allegations………………………… 10

   B.  The Amended Complaint should be dismissed because it does not state any cause of action…………......................................................................................................................... 11

      1.  Relators fail to plead Aventis's alleged "fraud" with particularity……………...... 11

      2.  Relators' "off-label" allegations fail to state a claim under the False Claims Acts.. 17

      3.  Relators' "kickback" allegations fail to state a claim under the False Claims Act... 22

   C.  Kennedy fails to state a retaliation claim………………………………………….. 24

**CONCLUSION**…………………………………………………………………………… 25

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|
| *Adcock v. Brakegate Ltd.*, 645 N.E. 2d 888 (Ill. 1994)……………………………………….. | 17 |
| *Bannon v. Edgewater Med. Ctr.*, 406 F. Supp. 2d 907 (N.D. Ill. 2005)……………………… | 10 |
| *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502 (7th Cir. 2007)…………………….. | 17 |
| *Brandon v. Anesthesia & Pain Mgmt. Assocs.*, 277 F.3d 936 (7th Cir. 2002)……………….. | 24 |
| *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188 (7th Cir. 1993)……………………………….. | 3 |
| *DiLeo v. Ernst & Young*, 901 F.2d 624 (7th Cir. 1990)……………………………………… | 12 |
| *Durcholz v. FKW Inc.*, 189 F.3d 542 (7th Cir. 1999)……………………………………….. | 17 |
| *Grafon Corp. v. Hausermann*, 602 F.2d 781 (7th Cir. 1979)……………………………….. | 8 |
| *Humphrey v. Franklin-Williamson Human Svcs., Inc.*, 189 F. Supp. 2d 862 (S.D. Ill. 2002)... | 2 |
| *King v. F.E. Moran, Inc.*, 2002 WL 2003219 (N.D. Ill. 2002)……………………………….. | 21 |
| *Klaczak* ex rel. *U.S. v. Consolidated Med. Trans.*, 458 F. Supp. 2d 622 (N.D. Ill. 2006) | 15, 23 |
| *Luckey v. Baxter Healthcare Corp.*, 2 F. Supp. 2d 1034, 1050 (N.D. Ill. 1998), affirmed 183 F.3d 730 (7th Cir. 1999)………………………………………………………... | 24 |
| *Neal v. Honeywell, Inc.*, 942 F.Supp. 388 (N.D. Ill. 1996)…………………………………… | 24 |
| *Peterson v. Comm. Gen. Hosp.*, 2003 WL 262515 (N.D. Ill. 2003)………………………….. | 13 |
| *Phelps v. Sherwood Med. Indus.*, 836 F.2d 296 (7th Cir. 1987)……………………………….. | 20 |
| *Scachitti v. UBS Finan. Svc.*, 831 N.E.2d 544 (Ill. 2005)…………………………………….. | 2 |
| *Servpro Indus., Inc. v. Schmidt*, 905 F. Supp. 475 (N.D. Ill. 1995)………………………….. | 12 |
| *Sharp v. Cons. Med. Trans., Inc.*, 2001 WL 1035720 (N.D. Ill. 2001)……………………….. | 21 |
| *Sprinkle v. Lowe's Home Ctrs., Inc.*, 2006 WL 2038580 (S.D. Ill. 2006)……………………. | 25 |

| Cases | Page(s) |
|---|---|
| *Thompson v. Illinois Dep't of Prof'l Reg.*, 300 F.3d 750 (7th Cir. 2002).......................... | 1 |
| *Turner v. Michaelis Jackson & Assocs.*, 2007 WL 496384 (S.D. Ill. 2007)..................... | 13 |
| *U.S. ex rel. Bantsolas v. Superior Air and Ground Ambulance Trans., Inc.*, 2004 WL 609793 (N.D. Ill. 2004)............................................................................................... | 12 |
| *U.S. ex rel. Bidani v. Lewis*, 2001 WL 1609377 (N.D. Ill. 2001)............................... | 22 |
| *U.S. ex rel. Burlbaw v. Orenduff*, 400 F. Supp. 2d 1276 (D.N.M. 2005)...................... | 18 |
| *U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301(11th Cir. 2002).................. | 13, 14 |
| *U.S. ex rel. Crews v. NCS Healthcare*, 460 F.3d 853 (7th Cir. 2006).............................. | 12 |
| *U.S. ex rel. Drescher v. Highmark, Inc.*, 305 F. Supp. 2d 451 (E.D. Pa. 2004).................. | 20 |
| *U.S. ex rel. Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492 (7th Cir. 2003).................... | 8 |
| *U.S. ex rel. Fowler v. Caremark RX, Inc., 2006 WL 3469537 (N.D. Ill. 2006)....................* | 12 |
| *United States* ex. rel. *Franklin v. Parke-Davis*, 2003 WL 22048255 (D. Mass. 2003).......... | 20 |
| *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374 (7th Cir. 2003)..................... | 12, 13, 14 |
| *U.S. ex rel. Gear v. Emer. Med. Assocs. of IL, Inc.*, 436 F.3d 726 (7th Cir. 2006)............... | 8 |
| *U.S. ex rel. Gross v. Aids Research Alliance-Chicago*, 415 F.3d 601 (7th Cir. 2006)............ | 12, 14, 17 |
| *U.S. ex rel. Hess v. Sanofi-Synthelabo Inc.*, 2006 WL 1064127 (E.D. Mo. 2006)............... | 15, 18, 21 |
| *U.S. ex rel. Karvelas* v. *Melrose-Wakefield Hosp.*, 360 F.3d 220 (1st Cir. 2004)............... | 13 |
| *U.S. ex rel. Kinney v. Hennepin Cty. Med. Ctr.*, 2001 WL 964011 (D. Minn. 2001)............ | 20 |
| *U.S. ex rel. Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730 (7th Cir. 1999)..................... | 17, 21 |
| *U.S. ex rel. Mathews v. Bank of Farmington*, 166 F.3d 853 (7th Cir. 1999)....................... | 8, 9, 10, 11 |
| *United States ex rel. Obert-Hong v. Advocate Health Care, 2001 WL 303692 (N.D. Ill. 2001)...............................................................................................................* | 13, 14 |

| Cases | Page(s) |
|---|---|
| *United States* ex rel. *Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548 (10th Cir. 1992)…….. | 10 |
| *U.S.* ex rel. *Rost v. Pfizer, Inc.*, 446 F. Supp. 2d 6 (D. Mass. 2006)…………………………... | 19 |
| *U.S.* ex rel. *Salmeron v. Eter. Recovery Sys., Inc.*, 2006 WL 3445579 (N.D. Ill. 2006)……… | 13 |
| *U.S.* ex rel. *Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939 (N.D. Ill. 2004)……. | 10, 13 |
| *U.S. v. Krizek*, 111 F.3d 934 (D.C. Cir. 1997)……………………………………………….... | 20 |
| *U.S. v. Mackby*, 261 F.3d 821 (9th Cir. 2001)……………………………………………….. | 20 |
| *U.S. v. Pres. and Fellows of Harvard Coll.*, 323 F. Supp. 2d 151 (D. Mass. 2004)………….. | 18, 20 |
| *U.S. v. Rogan,* 459 F. Supp. 2d 692 (N.D. Ill. 2006)……………………………………….. | 23 |
| *Washington Legal Found. v. Friedman*, 13 F. Supp. 2d 51 (D.D.C. 1998), 202 F.3d 331 (D.C. Cir. 2000)………………………………………………………………………... | 18 |
| *Yesudian v. Howard Univ.,* 946 F. Supp. 31, 33-34 (D.D.C. 1996)………………………….. | 25 |

| Statutes, Rules and Regulations | Page(s) |
|---|---|
| 31 U.S.C. § 3729(a)(1), (2)………………………………………………………………….. | 17 |
| 31 U.S.C. § 3730(b)(2)…………………………………………………………………….... | 7 |
| 31 U.S.C. § 3730(e)(4)……………………………………………………………………….. | 1, 3, 8, 9, 10 |
| 31 U.S.C. § 3730(h)………………………………………………………………………….. | 24 |
| 42 U.S.C. § 1320a-7b……………………………………………………………………….. | 23 |
| 42 U.S.C. § 1395x(t)(1) (Medicare)……………………………………………………….... | 19, 21 |
| 42 U.S.C. §§ 1396a(a), 1396r-8(k) and § 1396r-8(g) (Medicaid)…………………….. | 19, 21 |
| 63 Fed. Reg. 40,954, 40,955…………………………………………………………….. | 21 |
| 67 Fed. Reg. 49982-01, II.B.3.b…………………………………………………………. | 22 |

| Statutes, Rules and Regulations | Page(s) |
|---|---|
| 42 C.F.R. §§ 405, 412, 413……………………………………………………… | 21 |
| 42 C.F.R. § 412……………………………………………………………….. | 21, 22 |
| 42 C.F.R. § 440.120(a)……………………………………………………... | 19 |
| 305 ILCS 5/14-8…………………………………………………………… | 21 |
| 740 ILCS § 175…………………………………………………………….. | 24 |
| 740 ILCS 175/3(a)(1), (2)………………………………………………….. | 17 |
| 740 ILCS 175/4(b)(2)……………………………………………………….. | 7 |
| 740 ILCS 175/4(e)(4)………………………………………………………. | 1, 3, 8, 9, 10 |
| Federal Rule of Civil Procedure 8(a)……………………………………………………………….. | 1, 16, 18, 23 |
| 9(b)………………………………………………………………………….. | 1, 3, 16, 22 |
| 12(b)(1)……………………………………………………………………... | 1, 3 |
| 12(b)(6)……………………………………………………………………... | 1, 22, 23 |

Defendant Aventis Pharmaceuticals, Inc. respectfully moves the Court to dismiss Plaintiffs' Amended Complaint with prejudice for the Court's lack of subject matter jurisdiction over significant portions of the Plaintiffs' causes of action, pursuant to 31 U.S.C. § 3730(e)(4), 740 ILCS 175/4(e)(4), and Federal Rule of Civil Procedure 12(b)(1), and for Plaintiffs' failure to plead fraud with the requisite particularity and to state any claim on which relief may be granted, pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6).

## INTRODUCTION

Defendant Aventis Pharmaceuticals, Inc. ("Aventis") is a New Jersey-based pharmaceutical company that at all times relevant to the Amended Complaint developed and marketed life-saving pharmaceuticals prescribed for a range of diseases and conditions, including cancer, diabetes, heart attack, and deep vein thrombosis. Among the products marketed and sold by Aventis was the prescription drug LOVENOX® (enoxaparin sodium injection) ("Lovenox"), a low-molecular-weight heparin that produces an anticoagulation effect on blood.

Relator Katy Kennedy ("Kennedy") worked for Aventis as a sales representative for little more than two years before quitting in February 2004. Amend. Compl. ¶ 7.[1] At the time of filing of the Amended Complaint, Relator Frank Matos ("Matos") had worked for Aventis as a sales representative since March 1998. Amend. Compl. ¶ 8.

In 2000, Aventis and defendant PharmaNetics Inc. ("PharmaNetics") began discussions regarding the development of a test to measure blood clotting levels in certain Lovenox patients. Amend. Compl. ¶ 4. According to Relators' own allegations, PharmaNetics and Aventis issued press releases in April 2000 and October 2002, in which it was announced that the test, the "ENOX card," was intended for use on heart patients undergoing Percutaneous Coronary

---

[1] The allegations of the Amended Complaint are accepted as true only where they are well-pled and solely for the purpose of the Court's consideration of the instant motion to dismiss its claims. *Thompson v. Illinois Dep't of Prof'l Reg.*, 300 F.3d 750, 753 (7th Cir. 2002).

Intervention ("PCI") procedures in a cardiac catheterization laboratory ("cath lab"). Amend. Compl. ¶¶ 44-45.[2]

Relators Kennedy and Matos (hereinafter "Relators"), filed their original *qui tam* complaint against Aventis on April 24, 2003, alleging generally that Aventis improperly promoted Lovenox for off-label uses and provided items of value to physicians in violation of the Anti-Kickback Statute. Compl. ¶¶ 3-5, 15-16. As no private right of action exists for Aventis's alleged offenses, Relators cast their claims as violations of the federal False Claims Act, 31 U.S.C. § 3729 *et seq*. ("FCA"), and the Illinois Whistleblower Reward and Protection Act, 740 ILCS 175/3(a) ("IWRPA") (collectively, the "False Claims Acts").[3] However, Relators' original complaint did not include any specific allegations of alleged off-label promotion, kickbacks, or false claims. Compl. ¶¶ 3-5, 15-16.

While Relators' original complaint was under seal, as required by the False Claims Acts, 31 U.S.C. § 3730 (b)(2), 740 ILCS 175/4(b)(2), PharmaNetics filed an action against Aventis under the Lanham Act and state law, in which it alleged, *inter alia*, that Aventis "engaged in off-label promotion of its drug for PCI." Amend. Compl. ¶ 49 (citing *PharmaNetics v. Aventis*, No. 03-cv-00817, Complaint (E.D.N.C. Nov. 3, 2003)).[4] Armed with the allegations of the

---

[2] As explained in detail below, while Lovenox is not indicated for use *during* PCI procedures, Lovenox is approved for use in heart patients with "UA/NSTEMI" (unstable angina or a certain kind of myocardial infarction), without regard to whether such patients may transition to PCI procedures. *Infra*, p.18. As such, the ENOX test was not a vehicle for promoting off-label use of Lovenox, and the press releases relied on by Relators are not evidence to the contrary. *Id.*

[3] Because the IWRPA is virtually identical to the FCA, case law regarding the FCA is also applicable to the IWRPA. *See Humphrey v. Franklin-Williamson Human Svcs., Inc.*, 189 F. Supp. 2d 862, 867 (S.D. Ill. 2002); *Scachitti v. UBS Finan. Svc.*, 831 N.E.2d 544, 557 (Ill. 2005).

[4] PharmaNetics' suit, which was ultimately dismissed on summary judgment, also publicly disclosed the other Lovenox marketing statements that Relators allege in the Amended Complaint, well before Relators filed that pleading. *Cf.* Amend. Compl. ¶¶ 30, 34 (Aventis promoted Lovenox as "Therapeutic within 30 minutes"); *PharmaNetics* Memorandum in Support of Motion for Preliminary Injunction (Dec. 18, 2003) (Jones Aff. Ex. 1) p. 2 (Aventis advertised Lovenox "reaches therapeutic levels within ½ Hour"); *PharmaNetics* Compl. (Jones Aff. Ex. 2) *passim* (Aventis promoted Lovenox as "therapeutic from dose one").

PharmaNetics complaint that Relators' original complaint lacked, Relators filed their Amended Complaint in May 2004.

Relators' attempt to convert Aventis' publicly-disclosed relationship with PharmaNetics and PharmaNetics' allegations in its lawsuit into causes of action under the False Claims Acts fails, and Relators' suit against Aventis must be dismissed for at least three reasons. *First*, this Court lacks subject-matter jurisdiction over Relators' off-label promotion claims because Relators merely repeat allegations that were publicly disclosed prior to the dates on which Relators disclosed them to the United States and the State of Illinois (collectively, "the Government"). 31 U.S.C. §§ 3730(e)(4); 740 ILCS 175/4(e)(4). *Second*, Relators have failed to plead the alleged fraud with the particularity required by Federal Rule of Civil Procedure 9(b). *Third*, Relators' allegations do not state any cause of action under the False Claims Acts. Thus, as articulated below, Relators have not pled any claim upon which relief may be granted, nor can they do so if granted leave to amend. Accordingly, the Court should dismiss the Amended Complaint with prejudice.

## FACTUAL BACKGROUND[5]

### A.      Lovenox

Lovenox is the most widely studied and prescribed low-molecular-weight heparin in the world. According to Relators, Lovenox is prescribed almost exclusively for inpatient hospital use. Amend. Compl. ¶ 3. At all times relevant to Relators' claims,[6] Lovenox was approved by the FDA for seven clinical indications, including to prevent certain serious cardiac conditions,

---

[5] Because Aventis's jurisdictional challenge to Relators' *qui tam* claims is brought under Fed. R. Civ. P. 12(b)(1), the Court may examine evidence outside the four corners of the complaint to rule on that portion of Aventis's motion. *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993). In fact, much of the evidence necessary to establish that Relators' claims are barred by the jurisdictional provisions of the False Claims Acts is set forth in the Amended Complaint.

[6] Although the Amended Complaint does not specify the time period covered by Relators' claims, it appears to include allegations related to conduct between August 2001 and February 2004.

i.e., "prophylaxis of ischemic complications of unstable angina and non-Q-wave myocardial infarction ["UA/NSTEMI"], when concurrently administered with aspirin." Amend. Compl. ¶ 22; Jones Aff. Ex. 3 (Lovenox Package Insert) p. 2. Patients with such conditions are often treated not only with pharmaceuticals such as Lovenox, but also with more invasive procedures requiring instrumentation in the form of PCI. As a result, many patients are transitioned to PCI procedures in hospital cardiac cath labs after receiving Lovenox in the emergency room. Jones Aff. Ex. 4, at 6 (*PharmaNetics v. Aventis*, Order Mar. 9, 2005). Although Lovenox is not approved for use by interventional cardiologists for use *during* PCI procedures, Lovenox is approved, and can be promoted, for use in UA/NSTEMI patients, regardless of whether they may transition to PCI procedures.[7] Jones Aff. Ex. 3; Jones Aff. Ex. 4, at 20.

### B. PharmaNetics' ENOX test and ensuing litigation

In 2000, Aventis entered into a Collaborative Development Agreement with PharmaNetics for development of a test card to measure the anticoagulant effects of Lovenox in UA/NSTEMI patients who might transition to PCI procedures. From that time until Relators filed their original complaint on April 24, 2003, the agreement between Aventis and PharmaNetics and its intended purpose were well-publicized.

- In April 2000, PharmaNetics issued a press release announcing that the development of the ENOX card would result in "the ability to monitor the drug [Lovenox] in potential new areas of study such as [PCI]." Jones Aff. Ex. 5 ("PharmaNetics Signs Agreement with Aventis Pharmaceuticals to Develop Theranostic Test for Enoxaparin," Apr. 18, 2000); Amend. Compl. ¶ 44.

- In August 2002 the FDA approved the ENOX test specifically "to detect the anticoagulant effects . . . of [Lovenox] in arterial citrated whole blood

---

[7] The approved "package insert," or product labeling, for Lovenox specifically contemplates that UA/NSTEMI patients who have been administered Lovenox may progress to "vascular instrumentation during [their] treatment" and provides instructions for physicians relating to cardiac interventional procedures: "[t]he vascular access sheath for [vascular] instrumentation should remain in place for 6 to 8 hours following a dose of Lovenox injection."

from patients with [UA/NSTEMI] who may transition to percutaneous intervention." Jones Aff. Ex. 6 (510K pre-market approval letter). Following that approval, PharmaNetics issued a press release announcing that "[p]roviding physicians with the means to quickly and conveniently detect the effect of anticoagulation with [Lovenox] should facilitate its use in [UA/NSTEMI] patients transitioning to the cath lab." Jones Aff. Ex. 7 ("PharmaNetics Receives FDA 510K Clearance to Market New Theranostic Test For Enoxaparin," Aug. 29, 2002).

- In October 2002, PharmaNetics issued a press release in which it stated the ENOX test "may provide the interventional cardiologist with the level of comfort they need to start a patient on [Lovenox] in the emergency room without the need for discontinuation of use if the patient is transferred to the Cath Lab." Jones Aff. Ex. 8 ("PharmaNetics Introduces ENOX® Test at Transcatheter Cardiovascular Therapeutics (TCT) Meeting in Washington D.C.," Oct. 17, 2002); Amend. Compl. ¶ 45. Similar press reports in October 2002 also announced the ENOX Test's intended use by interventional cardiologists to test coagulation levels in patients preparing to undergo PCI procedures. Jones Aff. Ex. 9 ("Cardiologists Now Have New Resource To Manage The Leading Anticoagulant Drug," Oct. 11, 2002); Jones Aff. Ex. 10 ("PharmaNetics Announces Third Quarter Results; Company Recently Received FDA Clearance on ENOX Test," Oct. 29, 2002).

- Another press release, published in November 2002, described the ENOX test as "the missing link that cardiologists have needed to effectively and safely replace heparin with enoxaparin during coronary intervention." Jones Aff. Ex. 11 ("PharmaNetics Announces Results of 600-Patient Elect Trial," Nov. 18, 2002).

- In December 2002 PharmaNetics and Aventis announced they had begun a collaborative marketing program to promote the ENOX test for use by interventional cardiologists. Jones Aff. Ex. 12 ("PharmaNetics Receives Final Milestone Payment from Aventis," Dec. 19, 2002).

- In a press release dated January 9, 2003, PharmaNetics stated that "much of the sales development expense and effort [associated with marketing the ENOX test] is provided by Aventis." Jones Aff. Ex. 13 ("Pharmanetics Announces Collaborative Sales and Marketing Program with Aventis for Launch of Enoxaparin Test," Jan. 9, 2003). Specifically, PharmaNetics stated that the purpose of its collaboration with Aventis was "to address a desire by some cardiovascular interventionalists to discern the anticoagulant effects of [Lovenox] *during invasive cardiac procedures*." *Id.* (emphasis added).

- In a news article published April 4, 2003—less than three weeks before Relators filed their original *qui tam* complaint against Aventis— PharmaNetics announced "that it continued to be excited about the positive reception the Company's ENOX test is receiving among interventional cardiologists," with "57 hospitals currently conducting evaluations *in cardiac catheterization labs*." Jones Aff. Ex. 14 ("PharmaNetics Announces Filing of 510 K Application for Its Thrombin Inhibitor Management Test 'TIM,'" Apr. 4, 2003) (emphasis added).

Thus, the fact that Aventis and PharmaNetics collaborated to develop and market the ENOX test for use in monitoring anticoagulation levels in Lovenox patients transitioning to PCI procedures—precisely the alleged conspiracy and "unlawful" conduct Relators attempt to describe in their Amended Complaint—was publicly and thoroughly disclosed well before Relators even filed their original complaint (which did not yet make such allegations).

Ultimately, the companies disagreed over the marketing of Lovenox and the ENOX test, and on November 3, 2003, PharmaNetics filed suit against Aventis, asserting claims under the Lanham Act and contract and state law tort theories, alleging that Aventis's marketing of Lovenox constituted false advertising. Specifically, PharmaNetics asserted that Aventis marketed Lovenox for its approved indication for treatment of UA/NSTEMI patients who undergo PCI procedures—the same use Relators have put at issue in the present suit. Jones Aff. Ex. 3 at ¶ 33. Ultimately, the court concluded that both Lovenox and the ENOX test were approved by the FDA for "patients with UA/NSTEMI who may transition to [PCI]." Jones Aff. Ex. 4 at 20.

### C. Relators' allegations and the Government's decision not to intervene

Relators filed their original *qui tam* complaint under seal in April 2003, over a year and a half after the initial publicity surrounding PharmaNetics' ENOX test announced that it would be used to monitor Lovenox in PCI procedures. In that complaint, Relators broadly alleged, without *any* detail, that Aventis caused the submission of false claims or statements to the Government

by disseminating unidentified "off-label information" relating to Lovenox and offering unspecified "things of value" to unnamed "physicians and other customers." Compl. ¶¶ 3, 5. Contrary to the requirements of the Acts, only *after* they filed their *qui tam* complaint did Relators disclose all material evidence in their possession to the Government. 31 U.S.C. § 3730(b)(2); 740 ILCS 175/4(b)(2); United States' Unopposed *Ex Parte* Motion For An Extension of Time to Consider Election to Intervene, Jun. 17, 2003, at ¶ 3 ("In mid-May 2003, the relators provided the United States with the required material evidence.").

On May 14, 2004, Relators filed their Amended Complaint. Once again, Relators failed to disclose all material evidence of the allegations in that complaint to the Government until well after its filing. *See* Joint Unopposed *Ex Parte* Motion of the United States and the State of Illinois for Second Extension of Time to Consider Election to Intervene, June 15, 2004, ¶ 4 (stating "additional material evidence has come into the relators' possession that they *plan to disclose* to the United States and the State of Illinois.") (emphasis added). After a two and a half year period in which it reviewed and investigated Relators' allegations, the Government declined to intervene in this action.

In their Amended Complaint Relators assert six *qui tam* claims, contending that Aventis violated the False Claims Acts by promoting Lovenox "off-label," by promoting and conspiring with PharmaNetics to promote the ENOX test for allegedly "unlawful" purposes through the use of allegedly false marketing statements, and by engaging in a variety of internal training events relating to off-label uses of Lovenox. Relators also contend that Aventis violated the False Claims Acts by giving "things of value" to physicians and pharmacists in order to induce prescriptions of Lovenox. In addition, the Amended Complaint asserts three counts for retaliation under the False Claims Acts.

## ARGUMENT

**A.    The Court lacks subject-matter jurisdiction over Relators' claims arising from their allegations of off-label promotion and false statements because of the public-disclosure bar.**

This Court lacks subject matter jurisdiction over the Relators' false statement- and off-label promotion-related claims against Aventis under the "public disclosure bar," which prohibits *qui tam* actions "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing . . . or from the news media, unless . . . the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4); 740 ILCS 175/4(e)(4); *U.S.* ex rel. *Gear v. Emer. Med. Assocs. of IL, Inc.*, 436 F.3d 726, 728 (7th Cir. 2006). This jurisdictional bar is designed to prevent "parasitic lawsuits" brought by "persons who wish to capitalize on others' discovery of frauds to the exposure of which they themselves have in no way contributed." *U.S.* ex rel. *Mathews v. Bank of Farmington*, 166 F.3d 853, 858 (7th Cir. 1999) (citations omitted). Relators bear the burden of establishing that their claims are not barred by the jurisdictional requirements of the False Claims Acts. *Id.* at 859; *see also Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979) (holding the party invoking the court's jurisdiction bears the burden of establishing jurisdiction by "competent proof.").

**1.    The facts underlying Relators' allegations were publicly disclosed.** A public disclosure has occurred for purposes of the False Claims Acts "when the critical elements exposing the transaction as fraudulent are placed in the public domain." *U.S.* ex rel. *Feingold v. AdminaStar Fed., Inc.*, 324 F.3d 492, 495 (7th Cir. 2003). In that event, a relator must establish that his claims are not based on the publicly disclosed information or that he is the original source of the information. *Id.*; *Mathews*, 166 F.3d at 859. In the present case, all of the facts that allegedly support Relators' core off-label claims—that Aventis promoted Lovenox for use in

UA/NSTEMI patients who would undergo PCI procedures and conspired with PharmaNetics to market the ENOX test to promote that alleged off-label use—were disclosed in numerous public press reports about the companies' collaboration agreement, in the FDA-approved product labeling for Lovenox, in the public FDA approval of the intended uses of the ENOX test, and in the *PharmaNetics* lawsuit. *See supra*, p. 5-6; Jones Aff. Exs. 5-14. The same is true with respect to Relators' allegations regarding the allegedly false marketing statements for Lovenox. *See supra*, n. 4; Jones Aff. Exs. 1-2. Thus, Relators' allegations of off-label promotion and false statements were publicly disclosed well before they were alleged in this *qui tam* action.

### 2.  Relators' allegations are "based upon" the publicly disclosed information.

Relators' allegations of off-label promotion of Lovenox are "based upon" these public disclosures for purposes of the jurisdictional bar because they "both depend[] essentially upon [that] publicly disclosed information and [are] actually derived from such information." *Mathews*, 166 F.3d at 864. Not only do Relators' allegations parrot much of the information contained in the prior public disclosures, they actually rely on those disclosures—including by citing and quoting some of them—to support their claims. Amend. Compl. ¶¶ 44 (citing April 18, 2000 press release), 45 (citing October 17, 2002 press release), 49 (same). Nor do Relators offer any allegations of off-label promotion or false marketing of Lovenox of any significance that are not derived from those public disclosures. Thus, Relators' off-label allegations are "based upon" prior public disclosures for purposes of the jurisdictional bars of the False Claims Acts.[8]

---

[8] Because Relators' Amended Complaint contains allegations based on public disclosures, the Court should dismiss the entire action. *See Mathews,* 166 F.3d at 863 ("a *qui tam* plaintiff may not bring an action based *in any part* on such transactions.") (emphasis added); *United States* ex rel. *Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 553 (10th Cir. 1992) ("a plaintiff whose qui tam action is based in any part upon publicly disclosed allegations or transactions is subject to the 'original source' jurisdictional requirement.").

**3.      Relators are not an "original source" of their allegations.**  As a result,

Relators' claims arising from alleged off-label promotion of Lovenox and false statements are

barred unless Relators can establish that they qualify as an "original source" of those allegations.

*Mathews*, 166 F.3d at 864.  An "original source" is "an individual who has direct and

independent knowledge of the information on which the allegations are based and has voluntarily

provided the information to the Government before filing [a *qui tam*] action."  31 U.S.C. §

3730(e)(4)(B); 740 ILCS 175/4(e)(4)(B).  To be considered an original source, Relators must

establish first that they have "direct and independent knowledge" of the information in their

complaint, and, second, that they are a "source"—that they "voluntarily provided the information

to the government before filing suit."  *Bannon v. Edgewater Med. Ctr.*, 406 F. Supp. 2d 907, 922

(N.D. Ill. 2005) (citations omitted).  Relators cannot do so.

There can be no dispute that Relators' original complaint was utterly devoid of any

particular allegations of off-label promotion or false statements; Relators broadly alleged only

that off-label promotion occurred.  Compl. ¶¶ 3, 4, 15.  The original complaint contains "no

allegation from which it could be concluded that [Relators] had direct and independent

knowledge of the fraud [they] allege[ed]."  *Bannon*, 406 F. Supp. 2d at 923.  While Relators'

Amended Complaint, filed over a year later, contains additional allegations regarding

PharmaNetics and the ENOX test card, as well as one alleged marketing statement regarding

Lovenox, those alleged facts are drawn directly from the public record in the press reports or the

*PharmaNetics* litigation.  Amend. Compl. ¶¶ 43-52; *see U.S.* ex rel. *Yannacopolous v. General

Dynamics*, 315 F. Supp. 2d 939, 952-53 (N.D. Ill. 2004) ("documents filed with the court are

'public disclosures' in a 'civil hearing,'" sufficient to trigger the public disclosure bar) (citing

*Mathews*, 166 F.3d at 860). Moreover, Relators fail to allege any direct knowledge of any illegal act committed by Aventis or any false claim resulting from such conduct. *See infra*, Part B.1.

Finally, the record establishes that Relators did not disclose the material evidence in support of their Amended Complaint to the Government before filing that pleading—or for at least two months following that filing. *See* Joint Unopposed *Ex Parte* Motion of the United States and the State of Illinois for Second Extension of Time to Consider Election to Intervene, Docket No. 16, June 15, 2004, ¶ 4 ("On May 14, 2004, the relators filed an amended complaint. Relators' counsel also recently informed the U.S. Attorney's Office that additional material evidence has come into the relators' possession that they *plan to disclose* to the United States and State of Illinois.") (emphasis added). Because the Acts require such disclosures prior to filing a *qui tam* action, Relators cannot be an original source of the allegations in their Amended Complaint, and their claims must be dismissed for lack of subject-matter jurisdiction under the public disclosure bar. 31 U.S.C. § 3730(e)(4)(B); 740 ILCS 175/4(e)(4)(B); *Bannon*, 406 F. Supp. 2d at 924 (the public disclosure bar applies equally to an original and an amended *qui tam* complaint).

**B.     The Amended Complaint should be dismissed because it does not state any cause of action.**

Even if Relators had properly invoked the Court's jurisdiction, their claims against Aventis still should be dismissed because Relators have failed to plead their claims with the required particularity, and to plead facts sufficient to state any claim under the False Claims Acts.

**1.     Relators fail to plead Aventis's alleged "fraud" with particularity.** The False Claims Acts are anti-fraud statutes, so causes of action under the Acts must meet the heightened pleading requirements of Rule 9(b). *U.S.* ex rel. *Gross v. AIDS Research Alliance-Chicago*, 415

F.3d 601, 604 (7th Cir. 2006). Rule 9(b) provides that "the circumstances constituting fraud . . .

shall be stated with particularity." Fed. R. Civ. P. 9(b). In this Circuit, Rule 9(b) has been

construed to require the plaintiff to allege "the who, what, when, where, and how: the first

paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

In other words, a plaintiff must allege with particularity all aspects of the purported fraud

"including the time and place of the fraud, the contents of the omissions or misrepresentations

and the identity of the party perpetrating the fraud." *Servpro Indus., Inc. v. Schmidt*, 905 F.

Supp. 475, 479 (N.D. Ill. 1995).

In the context of suits under the False Claims Acts, "Rule 9(b) requires a *qui tam* plaintiff

to do more than merely charge that the defendants engaged in fraudulent schemes and then

conclusively assert that fraudulent claims were submitted to the government." *U.S.* ex rel. *Garst

v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) (rejecting *qui tam* claims where

relator failed to connect allegations of deceit with actual claims for payment); *Gross*, 415 F.3d at

604-05 (same, citing *Garst*). Rather, a relator must come forward with evidence "linking" the

allegations of fraud to an actual false claim for payment. *Garst*, 328 F.3d at 378; *U.S.* ex rel.

*Crews v. NCS Healthcare*, 460 F.3d 853, 857-58 (7th Cir. 2006) (upholding dismissal of relator's

claims where the complaint did not identify claims for government payment resulting from the

alleged fraudulent acts); *U.S.* ex rel. *Fowler v. Caremark RX, Inc.*, 2006 WL 3469537, *5 (N.D.

Ill. 2006) ("[t]he most glaring deficiency is plaintiffs' failure to identify any false invoices

submitted to the government.") (Jones Aff. Ex. 15); *U.S.* ex rel. *Bantsolas v. Superior Air and

Ground Ambulance Trans., Inc.*, 2004 WL 609793, *3 (N.D. Ill. 2004) (dismissing *qui tam*

action due in part to relator's failure to identify "specific false claims") (Jones Aff. Ex. 16);

*Peterson v. Comm. Gen. Hosp.*, 2003 WL 262515, *1 (N.D. Ill. 2003) (dismissing relator's

claims for his failure to "identify or attach a single Medicare claim submitted by defendants for [the allegedly unlawful] services.") (Jones Aff. Ex. 17); *United States* ex rel. *Obert-Hong v. Advocate Health Care*, 2001 WL 303692, *3 (N.D. Ill. 2001) (requiring relator to provide at least "representative examples" of actual false claims) (Jones Aff. Ex. 18).[9]

Thus, allegations concerning fraudulent schemes, no matter how detailed, are inadequate under the False Claims Acts if they are not "link[ed] to any claim for payment." *Garst*, 328 F.3d at 378. As expressed by the *Peterson* court:

> [T]he whole point of relator's case is that defendants submitted Medicare claims for services they provided to patients . . . in violation of the . . . law. But which patients? And which claims? And which claims or other documents show defendants falsely certified their compliance with federal law? These questions are absolutely essential to relator's claim of fraud. . . . They must be pleaded with particularity. To be clear, the court does not expect relator to list every single patient, claim, or document involved, but he must provide at least some representative examples.

*Peterson*, 2003 WL 262515 at * 2 (*citing U.S.* ex rel. *Clausen v. Lab. Corp. of Am., Inc.*, 290 F.3d 1301, 1312-13 (11th Cir. 2002)); *U.S.* ex rel. *Karvelas* v. *Melrose-Wakefield Hosp.*, 360 F.3d 220, 232-33 (1st Cir. 2004). Relators' Amended Complaint does not even come close to satisfying the requirements of Rule 9(b).

Relators fail to allege *any* of the details regarding a *single* false claim that was submitted to the Government.[10] Namely, Relators fail to allege: ***who*** submitted any improper claim to

---

[9] The only exceptions in this Circuit, which run counter to the great weight of authority in this and other Circuits, appear to be *U.S.* ex rel. *Salmeron v. Eter. Recovery Sys., Inc.*, 2006 WL 3445579, *2 (N.D. Ill. 2006) and *U.S.* ex rel. *Yannacopolous v. General Dynamics*, 315 F. Supp. 2d 939, 945 (N.D. Ill. 2004), which did not require allegations of specific false claims. This view has been rejected by the Seventh Circuit, by the district courts of this Circuit, and other courts in prior and subsequent decisions. *U.S.* ex rel. *Turner v. Michaelis Jackson & Assocs.*, 2007 WL 496384, *4 (S.D. Ill. 2007) (dismissing the view of *Salmeron* and *Yannacopoulous* and collecting some of the "many" cases requiring specific examples of false claims).

[10] Relators' failure to identify any false claim submitted to the Government for payment requires the dismissal of Relators' claims that Aventis caused the presentation of false claims (Count I) and that Aventis made false statements to have false or fraudulent claims paid (Count II), because both causes of

Medicare or Medicaid; *what* those claims were for—which patients were treated, for which indication, and what amount of reimbursement was claimed; *when* or *where* those claims were submitted; or *how* those individual claims were fraudulent. Thus, Relators' allegations regarding Aventis's alleged off-label promotion and payment of illegal kickbacks are insufficient to state a claim under the False Claims Acts because they do not establish the next essential "link" in the FCA liability chain—actual reimbursement claims submitted to the Government. *Garst*, 328 F.3d at 378. Instead, Relators merely make the unsupported allegation that marketing statements and statements regarding off-label uses of Lovenox "resulted in fraudulent claims for off-label uses being submitted to the Governments." Amend. Compl. ¶¶ 5, 24, 51, 52. Such conclusory allegations that false claims were submitted are insufficient to allow Relators to maintain their action. *See U.S.* ex rel. *Rost v. Pfizer, Inc.*, 446 F. Supp. 2d 6, 27-28 (D. Mass. 2006) (dismissing a *qui tam* action based on the defendant pharmaceutical manufacturers' alleged off-label promotion activities where relator failed to identify how such activities caused the submission of false claims); *Gross*, 415 F.3d at 605; *Clausen*, 290 F.3d at 1311. Moreover, Relators make no attempt to connect their allegations of purported kickbacks paid by Aventis to false claims submitted to the Government. Amend. Compl. ¶¶ 6, 42 (alleging only that Aventis "offered things of value to physicians and others to induce health care program business for Lovenox.").

In addition to failing to identify any actual false claims submitted to the Government, Relators also fail to allege the fraudulent schemes underlying their claims with sufficient particularity. *See Obert-Hong*, 2001 WL 303692, *3 (relator must also plead specific instances of the underlying fraud with particularity). First, Relators fail to plead any actual incident of off-label promotion with any degree of particularity. In fact, the vast majority of Relators' allegations of "off-label promotion" relate to purely internal communications between Aventis

---

action are predicated on the submission of false claims. *See Gross*, 415 F.3d at 604-05.

employees.  Amend. Compl. ¶¶ 26-27, 29, 32-33, 35 (sales associates received information and articles on "unapproved" uses of Lovenox); 31, 33 ("clinical workshop materials" provided to Aventis employees).[11]  These allegations fail on their face because they involve internal dissemination of information and not "promotion" to physicians.  In addition, Relators acknowledge that some of this information was distributed to the sales force with the caveat that it was "not for promotional use, is off-label, and may not be discussed by the sales associates with physicians."  Amend. Compl. ¶ 32.  Finally, while Relators allege generally that Aventis *encouraged* its sales associates to sell Lovenox for off-label indications, Amend. Compl. ¶¶ 24, 26, 33, 35, Relators do not allege that any sales associate *actually* promoted Lovenox for an off-label indication, nor do they identify any sales associate who engaged in such activity, the date and place such activity occurred, the physician it involved, or the content of the off-label message allegedly delivered.  Thus, Relators have not alleged facts to support their allegation that Aventis promoted Lovenox for off-label uses.

Relators have provided even less detail to support their general allegation that Aventis violated the federal Anti-Kickback Statute, 42 U.S.C. § 1320a-7b.  With the exception of a handful of payments to one individual for speaking engagements—themselves lacking sufficient specificity—Relators fail to allege even the most basic facts concerning these alleged kickbacks—*i.e.*, the date the alleged kickback was given or who at Aventis was involved in paying the alleged kickback.  Relators do not even allege that the alleged payments were made by Aventis to induce referrals of federal healthcare business, as required under the Anti-Kickback Statute.  *See Klaczak* ex rel. *U.S. v. Consolidated Med. Trans.*, 458 F. Supp. 2d 622, 626 (N.D. Ill. 2006).  Relators' efforts to portray reimbursement for educational programs as

---

[11] The same is true for Relators' allegations regarding "false marketing statements" for Lovenox.  Amend. Compl. ¶¶ 30, 34 (sales force received materials indicating Lovenox is "Therapeutic within 30 minutes").

illegal "kickbacks," without any detail necessary to support such an allegation, improperly seeks to tarnish the reputations of Aventis and the alleged recipients, and fails to meet the requirements of Rules 8(a) and 9(b).

Relators twice have failed to allege facts sufficient to state their claims with the particularity required by Rule 9(b). As a result, they are not entitled to an opportunity to further amend their pleading in an effort to state those facts. *See U.S.* ex rel. *Hess v. Sanofi-Synthelabo Inc.*, 2006 WL 1064127, *12 (E.D. Mo. 2006) (the jurisdictional bar requires relator to disclose all material information before filing the *qui tam* complaint, thus relator may not amend to satisfy Rule 9(b)) (Jones Aff. Ex. 19).

**2.     Relators' "off-label" allegations fail to state a claim under the False Claims Acts.**  The False Claims Acts impose liability on any person who "knowingly presents, or causes to be presented, to [the] Government . . . a false or fraudulent claim for payment" or who knowingly uses a "false record or statement, in order to get a false or fraudulent claim paid or approved." 31 U.S.C. § 3729(a)(1), (2); 740 ILCS 175/3(a)(1), (2). To state a cause of action under the Acts, the relator must allege that: (1) the defendant made or caused to be made a claim to get the government to pay money; (2) the claim was false or fraudulent; (3) the defendant knew the claim was false or fraudulent; and (4) the underlying fraud was material to the government's decision to pay money. *See Gross*, 415 F.3d at 604; *U.S.* ex rel. *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 732-33 (7th Cir. 1999). Relators have failed to allege facts supporting any of these elements in connection with their "off-label" allegations.

*No claims, no off-label promotion.* First, as set forth in Part B.1., *supra*, Relators have not pled the existence of a single claim for payment submitted by any person, nor have they pled facts sufficient to establish that Aventis promoted Lovenox for off-label uses.[12]

*No falsity, no knowledge of falsity.* Second, Relators have not alleged—and cannot establish—that Aventis knowingly caused the submission of any false claims or statements to the Government. The intent element of the False Claims Acts "requires that the defendant have actual knowledge of . . . the *truth* or *falsity* of the information presented" to the Government. *Durcholz*, 189 F.3d at 544 (emphasis added). In other words, the defendant must know that the claims or statements submitted are actually "false;" if the claims submitted are literally true, or if the defendant does not know that they are false, no cause of action lies under the Acts. *See id.*; *Hess*, 2006 WL 1064127 at *8-10 (dismissing *qui tam* claims where relator alleged defendant engaged in off-label promotion and did not allege any "untrue" or "false" statements or submissions); *U.S. ex rel. Burlbaw v. Orenduff*, 400 F. Supp. 2d 1276, (D.N.M. 2005) ("It cannot be an actionable violation of the FCA for an individual to provide truthful information to the government."); *U.S. v. Pres. and Fellows of Harvard Coll.*, 323 F. Supp. 2d 151, 181 (D. Mass. 2004) (a False Claims Act action cannot be predicated on claims that are literally true).

Relators primarily rely on their broad allegations that the ENOX test was designed and used to market Lovenox to physicians for "unapproved" uses to support their allegations that

---

[12] Relators' conspiracy claims against Aventis and PharmaNetics fail for the same reason. *See supra*, Parts B.1-3; *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507-08 (7th Cir. 2007) (claims of civil conspiracy to commit fraud will be subject to the requirements of Rule 9(b)). In addition, their conspiracy claims fail for the separate reasons that they have not alleged any agreement by Aventis and PharmaNetics to get false claims paid, or any acts to do so. *Supra*, Parts B.1, 2; *Adcock v. Brakegate Ltd.*, 645 N.E. 2d 888, 894 (Ill. 1994) (to state a claim for conspiracy the plaintiff must allege (1) that the defendant conspired with one or more persons to get a false or fraudulent claim allowed or paid and (2) that one or more conspirators performed any act to effect the object of the conspiracy); *U.S. ex rel. Durcholz v. FKW Inc.*, 189 F.3d 542, 545 n.3 (7th Cir. 1999) (general civil conspiracy principles are applied to conspiracy claims under the Acts). Thus, those claims must be dismissed pursuant to Rules 8(a), 9(b), and 12(b)(6).

"false" claims and statements were submitted.[13]  Amend. Compl. ¶¶ 4, 23, 43-52.  Relators'

theory fails for at least two reasons.  First, Relators acknowledge that the ENOX test was used to

monitor the anticoagulant effects of Lovenox in UA/NSTEMI patients who will transition to a

PCI procedure.  Amend. Compl. ¶¶ 4, 43-45.  This simply is <u>not</u> an off-label use of Lovenox.

Jones Aff. Ex. 3; Jones Aff. Ex. 4, at 20.[14]

Second, Relators allege nothing to suggest that anything other than *truthful* information—

even about off-label uses—was ever submitted to the Government on a claim form.  Relators

allege that Lovenox is prescribed "almost exclusively for inpatient hospital use," and they do not

allege that Lovenox was promoted off-label for any other use.  Amend. Compl. ¶ 3.  In order to

receive Medicare or Medicaid reimbursement for inpatient hospital services, hospitals submit a

"UB-92" claim form, which requires the hospital to indicate the patient's age, sex, illness (such

as UA/NSTEMI), procedures performed (such as PCI), certain drugs administered (such as

Lovenox), and discharge status.  *See* Aventis's Request for Judicial Notice ("RJN"), Ex. 1.

Thus, all the information Government decision-makers require to make their reimbursement

decisions—even about an off-label use[15]—would be truthfully disclosed to the Government on

---

[13] While Relators also vaguely allege that Aventis disseminated information regarding off-label uses of Lovenox, including "dosing guidelines" and reprints of clinical publications, to physicians (Amend. Compl. ¶¶ 25, 28), these allegations are so devoid of concrete facts that they do not even pass muster under Rule 8(a).  Moreover, pharmaceutical manufacturers are entitled under both the applicable regulatory framework and the First Amendment to disseminate off-label information—including certain "reprints of clinical publications"—to physicians in certain circumstances.  *See, e.g.,* 21 C.F.R. §99.1-.501; *Washington Legal Found. v. Friedman*, 13 F. Supp. 2d 51, 74-75 (D.D.C. 1998), *vacated on other grounds*, 202 F.3d 331 (D.C. Cir. 2000) (holding manufacturers may disseminate certain scientific and academic materials "regardless of whether such [materials] include a significant or exclusive focus on off-label uses.").

[14] *PharmaNetics v. Aventis* Order Mar. 9, 2005 (holding both Lovenox and the ENOX test were approved by the FDA for "patients with UA/NSTEMI who may transition to [PCI].")

[15] Medicare and Medicaid provide for reimbursements of off-label uses in several circumstances, such as when the use is "medically accepted"—including when the use is listed in certain medical compendia or is approved by the particular hospital in which the drug was prescribed.  *See* 42 U.S.C. § 1395x(t)(1) (Medicare); 42 U.S.C. §§ 1396a(a), 1396r-8(k) and § 1396r-8(g) (Medicaid); 42 C.F.R. § 440.120(a); *see also* Medicare Benefit Policy Manual Ch. 1 §§ 30-30.2; Ch. 15 § 50.4.2 (*see* RJN, Ex. 2).  Thus,

each claim form.  Relators have alleged nothing to suggest otherwise, or to suggest how Aventis could have known about any allegedly false information included on any claim form in order to "knowingly cause" the submission of a false claim.

 *No causation.*  Relators also fail to plead how, in the circumstances alleged, a pharmaceutical manufacturer—that clearly does not itself submit claims to the Government for patient care—could "cause" the submission of false claims.  *See Rost*, 446 F. Supp. 2d at 27-28 (D. Mass. 2006) (dismissing a *qui tam* action under Rule 9(b) for relator's failure to identify how alleged off-label promotion activities caused the submission of false claims).  In fact, many courts that have considered the issue of liability for a defendant that does not actually submit claims have held that a defendant "causes the submission" of false claims only where it plays a direct role in the claim submission process.  *See U.S. v. Mackby*, 261 F.3d 821, 828 (9th Cir. 2001) (physician instructed billing service to place his identification number on claims, thus causing the submission of false claims); *U.S. v. Krizek*, 111 F.3d 934, 942 (D.C. Cir. 1997) (causation element satisfied where physician delegated to his wife the authority to submit claims on his behalf); *Harvard Fellows*, 323 F. Supp. 2d at 187-89 (holding a defendant may be found to have caused the submission of false claims where he signed invoices indicating that the expenses were properly chargeable to a federally-funded entity, as distinguished from a defendant who did not approve any expenses or take other steps to assist in the claims submission process and thus could not cause such submissions); *U.S.* ex rel. *Drescher v. Highmark, Inc.*, 305 F. Supp. 2d 451, 459-460 (E.D. Pa. 2004) (a defendant causes the submission of a false claim only when the submitting party is "merely a conduit to the transfer of government funds."); *U.S.* ex rel. *Kinney v. Hennepin Cty. Med. Ctr.*, 2001 WL 964011, *9 (D.

---

government decision-makers need not consider only a drug's FDA-approved label to allow reimbursement for a particular use, but can also consider a variety of other sources on a case-by-case basis.

Minn. 2001) (dismissing a *qui tam* claim for lack of evidence that defendant physician had "control over the content of the claims" or a "right to review the claim forms being submitted.") (Jones Aff. Ex. 20).[16]

Relators have not alleged any facts suggesting that Aventis was involved in any way in a health care provider's claims-submission process. Indeed, physicians who may choose to prescribe Lovenox for an off-label use are "learned intermediar[ies]," who stand between Aventis and any treatment or subsequent billing decision. *See Phelps v. Sherwood Med. Indus.*, 836 F.2d 296, 303 (7th Cir. 1987). Physicians and hospitals make independent decisions whether to use Lovenox, under what circumstances, whom to bill, and what to say in their claim for reimbursement. Because they act on their own accord—not as Aventis's "mere conduits"— Aventis did not "cause" physicians to submit any claims to the Government.

*No materiality.* Finally, Relators' claims fail because they have not sufficiently alleged that the off-label promotion "was material to the United States' buying position." *Luckey*, 183 F.3d at 732-33. The materiality element of an action under the False Claims Acts requires a *qui tam* relator to establish that the government would have refused to pay certain claims if it had known of the allegedly fraudulent acts. *Id.*; *King v. F.E. Moran, Inc.*, 2002 WL 2003219, *10 (N.D. Ill. 2002) (Jones Aff. Ex. 21); *Sharp v. Cons. Med. Trans., Inc.*, 2001 WL 1035720, *8 (N.D. Ill. 2001) (Jones Aff. Ex. 22). In other words, Relators must plead and prove that "but for [Aventis's] allegedly fraudulent misrepresentations the doctors would not have made claims to Medicare [or Medicaid] for off-label uses [of Lovenox] and that but for these allegedly

---

[16] A sole district court has adopted a different view and held that, under certain circumstances, off-label promotion of drugs might "cause" physicians to submit fraudulent claims to the Government within the meaning of the False Claims Act. *See United States* ex. rel. *Franklin v. Parke-Davis*, 2003 WL 22048255, *5 (D. Mass. 2003). *Franklin* is not binding on this Court, of course. More importantly, it is distinguishable in important ways, including that the defendant did not dispute that claims for off-label promotion could be false, at least with respect to certain Medicaid programs in some states. *Id.* at *3.

fraudulent misrepresentations Medicare [or Medicaid] would not have reimbursed the doctors."
*Hess*, 2006 WL 1064127, at *6.

In fact, Relators do not even plead the element of materiality. In general, Medicare and
Medicaid[17] reimburse inpatient hospital services through a prospective payment system ("PPS")
on the basis of diagnosis-related group codes ("DRGs"). 42 C.F.R. § 412. Patients are assigned
DRGs based on their age, sex, illness, procedures performed, and discharge status, and the
hospital receives a predetermined reimbursement amount for treating that patient. 63 Fed. Reg.
40,954, 40,955; 42 C.F.R. §§ 405, 412, 413. DRGs 124 and 125, for example, apply to patients
with circulatory disorders other than acute myocardial infarction whose condition requires
cardiac catheterization. *See* 67 Fed. Reg. 49982-01, II.B.3.b. Hospitals are reimbursed at the
same rates for all patients assigned to DRGs 124 and 125, regardless of the individual drugs they
are administered, or even if they are not administered any drug at all.[18] 42 C.F.R. § 412. As a
result, even if Relators had alleged that providers submitted claims for a UA/NSTEMI patient
who required a PCI procedure and was prescribed Lovenox for an off-label use, the off-label use
of Lovenox is immaterial to the Government's decision to reimburse hospitals for that inpatient.
*See U.S.* ex rel. *Bidani v. Lewis*, 2001 WL 1609377, *6 (N.D. Ill. 2001) (holding that False
Claims Act claims may be dismissed upon "regulations or rules conclusively showing" that the
alleged fraud was immaterial to the government's decision to pay).

---

[17] Hospital reimbursement rates for Medicaid are determined by each state with federal approval, while
hospital rates for Medicare are set by statute. 42 U.S.C. §§ 1395-1396. In general, state Medicaid
programs, including the Illinois Medicaid program, reimburse for inpatient hospital services on the same
basis as Medicare. *See* 305 ILCS 5/14-8.

[18] While hospitals may receive additional "outlier" reimbursements for extraordinarily costly inpatient
services, 42 C.F.R. § 412.80, Relators have not alleged that any patients treated with Lovenox qualified
for "outlier" reimbursement.

In sum, Relators' allegations concerning Aventis's promotion of Lovenox for off-label use do not give rise to any claim for relief under the False Claims Acts. Their claims should therefore be dismissed pursuant to Rules 8(a), 9(b) and 12(b)(6).

**3.     Relators' "kickback" allegations fail to state a claim under the False Claims Acts.** Relators also allege that Aventis provided "things of value" in the form of "excessive" speaker fees and "unrestricted grants" to physicians and entities in order to induce prescriptions of Lovenox. Amend. Compl. ¶¶ 36-42. Once again, Relators do not allege that any person or entity who received such "things of value" from Aventis ever submitted a claim for reimbursement to the Government. Amend. Compl. ¶¶ 36-42. Their "kickback" allegations must be dismissed for this reason alone.

Moreover, Relators fail to allege any concrete facts regarding how payments by Aventis constitute violations of the Anti-Kickback Statute. In order to establish a violation of the Anti-Kickback Statute, Relators must allege and establish that Aventis knowingly and willfully offered or paid remuneration to a person in order to induce referrals under a federal health care program. 42 U.S.C. § 1320a-7b. Relators allege that one pharmacist, Ben Muoghalu, was paid by Aventis for various speaking engagements in 2001 and 2002. Amend. Compl. ¶¶ 38-39. However, among many other lacking details, Relators do not allege that Aventis made any payment to Muoghalu in exchange for referrals of federal healthcare business; thus, they do not allege a violation of the Anti-Kickback Statute. *See Klaczak*, 458 F. Supp. 2d at 626 (granting summary judgment for defendant on relators' false claims act claims premised on alleged Anti-Kickback Statute violations where relators failed to establish that the defendant accepted something of value in return for referrals of Medicare or Medicaid business).

Similarly, Relators fail to allege any facts regarding how the alleged "unrestricted educational grants" and "tickets to sporting events, programs without educational value, grants and other items of value" given to various hospitals and other entities, Amend. Compl. ¶¶ 6, 40-41, induced the referral of business under a federal healthcare program or otherwise constituted "kickbacks." The mere fact that they were allegedly given to persons "in positions to prescribe or influence prescriptions for Lovenox" is insufficient to state a violation of the Anti-Kickback Statute. *U.S. v. Rogan*, 459 F. Supp. 2d 692, 714 (N.D. Ill. 2006) (holding "a hope, expectation or belief that referrals may ensue from remuneration for legitimate services is not a violation of the Anti-Kickback Statute."). Thus, Relators' "kickback" claims are insufficient to state any cause of action under the False Claims Acts for the reasons set forth in Part B.2., *supra*, and should be dismissed under Rules 8(a) and 12(b)(6).

### C.     Kennedy fails to state a retaliation claim.

Finally, Kennedy also has failed to state any claim for retaliation under the False Claims Acts, which provide private causes of action for Relators who are discharged or otherwise retaliated against as a result of engaging in conduct protected under the Acts. "Protected conduct" is limited to those "lawful acts done by the employee . . . in furtherance of an [FCA or IWRPA action], including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section." 31 U.S.C. § 3730(h); 740 ILCS § 175. In order to state a retaliation claim under the Acts, a plaintiff must plead facts which would demonstrate that her employer was on notice that she was engaged in such protected conduct, and that the employer discriminated against the plaintiff because of the protected conduct. *Brandon v. Anesthesia & Pain Mgmt. Assocs.*, 277 F.3d 936, 944 (7th Cir. 2002); *Luckey v. Baxter Healthcare Corp.*, 2 F. Supp. 2d 1034, 1050 (N.D. Ill. 1998), *affirmed* 183 F.3d 730 (7th Cir. 1999); *Neal v. Honeywell,*

*Inc.*, 942 F.Supp. 388, 394 (N.D. Ill. 1996). Kennedy fails to allege facts to show that Aventis had notice that she was engaged in protected conduct under the False Claims Acts.

While Kennedy alleges that she complained to her superiors about practices tied to the "inappropriate use of company funds," and violations of "various company internal controls," Kennedy does *not* allege that she advised anyone at Aventis that such practices resulted in any fraud *upon the Government*. Amend. Compl. ¶¶ 53-63. Raising concerns regarding alleged "improprieties," which are not connected to "alleged false claims to the government," or "funds . . . fraudulently obtained from the government" are insufficient to put Aventis on notice that Kennedy was acting in furtherance of a False Claims Act action. *Luckey*, 2 F. Supp. 2d 1054-56 (dismissing a False Claims Act retaliation action where the plaintiff alleged she informed her employer of "regulatory non-compliance," but did not voice any intention to file a *qui tam* action or allege that the government had been defrauded) (*citing Hopper v. Anton*, 91 F.3d 1261, 1270 (9th Cir. 1996)). Rather, in order to sustain her retaliation claim, Kennedy must allege that her statements to Aventis regarding the "inappropriate use[s] of company funds" and violations of "internal controls" indicated "the nexus between her complaints and the [False Claims Acts]." *Id.* at 1055 (*citing Yesudian v. Howard Univ.*, 946 F. Supp. 31, 33-34 (D.D.C. 1996). Kennedy has failed to do so, and her retaliation claims must be dismissed. [19]

---

[19]Count IX, brought by Kennedy under the IWRPA for retaliation for "refusing to participate in an illegal activity," fails for the separate reason that Kennedy does allege that she refused to participate in any specific activity that she reasonably believed was illegal, or that Aventis knew of such a refusal and retaliated against Kennedy as a result. 740 ILCS 174/20; *Sprinkle v. Lowe's Home Ctrs., Inc.*, 2006 WL 2038580, * (S.D. Ill. 2006) (holding that in order to prevail under this section, a plaintiff must show that "his discharge was in retaliation for his refusal to participate in an activity that he reasonably believed would result in a violation of a State or federal law, rule or regulation.") (Jones Aff. Ex. 23).

**CONCLUSION**

For the reasons discussed above, the Court should dismiss Relators' Amended Complaint with prejudice.

Dated: March 27, 2007

Respectfully submitted,

By: /s/ Jaime L.M. Jones

Scott R. Lassar
Stephen C. Payne
Jaime L.M. Jones
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000

***Attorneys for Defendant Aventis
Pharmaceuticals, Inc.***

-25-