IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ) | |
| KATY KENNEDY and FRANK A. MATOS, ) | |
| STATE OF ILLINOIS *ex rel.* KATY ) | |
| KENNEDY and FRANK A. MATOS, ) | |
| and KATY KENNEDY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 03 C 2750 |
| ) | |
| AVENTIS PHARMACEUTICALS, INC. ) | |
| and PHARMANETICS, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Defendants Aventis Pharmaceuticals, Inc. and PharmaNetics, Inc. have moved for reconsideration of the Court's September 13, 2007 ruling denying their motions to dismiss certain claims in the amended complaint of relators Katy Kennedy and Frank Matos and have asked the Court pursuant to 28 U.S.C. § 1292(b) to certify the ruling for interlocutory appeal. Familiarity with the September 13, 2007 ruling is assumed. *United States ex rel. Kennedy v. Aventis Pharmaceuticals, Inc.,* No. 03 C 2750, 2007 WL 2681701 (N.D. Ill. Sept. 13, 2007).

For the reasons stated below, the Court denies defendants' motions.

**1.     Aventis' motion for reconsideration or to strike**

Aventis contends that the Court erred when it held that the False Claims Act's public disclosure bar, 31 U.S.C. § 3730(e)(4), does not bar the *qui tam* claims of relators Katy Kennedy and Frank Matos. According to Aventis, relators' complaint includes six separate *qui tam*

claims. Aventis argues that because the Court held that some of the allegations underlying relators' claims were publicly disclosed, the Court mistakenly found that it had jurisdiction over "all of Relators' *qui tam* claims – including those it had concluded were based on the publicly disclosed allegations . . . ." Aventis Mot. to Reconsider at 4-5. It argues that the Court misinterpreted controlling precedent, specifically, *Rockwell Int'l Corp. v. United States*, 127 S. Ct. 1397 (2007), which according to Aventis holds that the public disclosure bar "does not permit such claim smuggling." *Id.* at 1410.

Aventis' motion is based on an erroneous premise. Relators' amended complaint does not, in fact, include six False Claims Act *qui tam* claims. Rather, the complaint alleges a single *qui tam* claim, albeit one that has three separate iterations, as the Court explains below. In their complaint, relators allege that defendants caused the presentation of false or fraudulent claims "based on Defendants' knowing dissemination of off-label information relating to the prescription drug Lovenox . . . ." *Id.* ¶¶ 2-3. Specifically, relators allege that "Defendants' off-label promotion of Lovenox caused physicians to prescribe Lovenox for off-label uses," and that "[t]his in turn caused physicians and hospitals to submit false claims to the [federal and Illinois] Governments" for reimbursement of off-label prescription of the drug. *Id.* ¶ 5. Though relators' complaint includes three False Claims Act counts, these are simply three separate iterations of the single underlying claim: one count alleging presentation of false claims, one alleging use of false records to seek payment of the same false claims, and one alleging conspiracy to seek payment of the same claims. *See id.* ¶¶ 64, 67, 70 (first paragraphs of Counts 1, 2, and 3, each incorporating the entirety of relators' factual allegations).

Aventis mistakes the underlying facts alleged by relators – all of which relate to the

single scheme to cause presentation of false claims regarding off-label prescription of Lovenox – for discrete *qui tam* claims. They are not.

As the Court held in its September 13, 2007 order, relators' *qui tam* claim is not barred by the public disclosure bar because the claim does not "depend[ ] essentially upon" publicly disclosed information. *Kennedy,* 2007 WL 2681701, at *7. *Rockwell* does not provide any basis for this Court to reconsider this ruling. *Rockwell* was a False Claims Act *qui tam* suit concerning a method of disposing of toxic sludge from a nuclear weapons plant that involved mixing it with cement and allowing it to harden into what were referred to as "pondcrete" blocks which would then be disposed of. Stone, the relator, reviewed a proposed manufacturing process for pondcrete and predicted in a memorandum to management that it would not work for various reasons and that this would result in the release of toxic waste. Rockwell nonetheless proceeded with the project. Several years later, after Stone had been laid off, Rockwell discovered "insolid" pondcrete blocks but allegedly did not tell the government for over two years. The alleged false claims involved "award fees" that the government paid Rockwell based on its evaluation of Rockwell's performance in operating the plant, including its performance concerning environmental safety. Stone and the government contended that Rockwell would have been paid less had it disclosed the pondcrete problems. *See Rockwell,* 127 S. Ct. at 1401-02.

At trial, the jury found against Rockwell only on claims submitted during a particular period, April 1987 through September 1988, rejecting the False Claims Act claims for earlier periods. Because Stone had left the company in March 1986, he had no direct knowledge regarding what had occurred during the 1987-88 period. The Supreme Court considered whether

3

a relator can be an "original source" when the only false claims the jury found involved a theory of fraud as to which he had no direct knowledge and thus could not have been an original source. The Court considered and rejected two theories on which a relator might, under these circumstances, be considered an "original source" for purposes of 31 U.S.C. § 3730(e)(4)(A). The Court first concluded that Stone's earlier prediction that the pondcrete would fail did not qualify as direct and independent knowledge, because it had failed not for the reason he predicted, but for a completely independent reason, specifically, as a result of actions by an employee who started with Rockwell after Stone left. *Id.* at 1409-10. Second, the Court rejected Stone's contention that his status as the original source of information regarding a completely separate alleged fraud did not qualify him as an "original source" for his claims concerning pondcrete. *Id.* at 1410. It was in that context that the Court made the comment about "claim smuggling" upon which Aventis relies. Specifically, the Court determined that Stone could not bootstrap his original source status regarding one theory of fraud into original source status for an entirely different theory. In this regard, the Court's conclusion was consistent with its discussion earlier in the decision that a relator may not plead "a trivial theory of fraud for which he had some direct and independent knowledge and later amend the complaint to include theories copied from the public domain," and that "new allegations *regarding a fundamentally different fraudulent scheme* require reevaluation of the relator's original source status." *Id.* at 1408 (emphasis added).

The present case presents an entirely different scenario. As described earlier, the matter on which the Court concluded that the relators are original sources involves the exact same allegedly fraudulent scheme as the one and only scheme they allege in their complaint. In short,

4

*Rockwell* does not stand for the proposition that relators' *qui tam* claim in this case is barred because some of the facts cited in their complaint were publicly disclosed, nor does it require revisiting the Court's September 13 decision.

For these reasons, the Court denies Aventis' motion for reconsideration. The Court also denies Aventis' motion to strike the allegations that involve public-record or previously-disclosed matters. The extent to which a False Claims Act relator who qualifies as an original source for the information on which his claims are premised can also use other previously disclosed matters to support his claim is a matter more appropriately addressed at a later stage of the case.

**2.     PharmaNetics' motion for reconsideration or to strike**

PharmaNetics has separately moved for reconsideration of the Court's decision on the "original source" question. It argues that because the information for which relators claim to have been an original source does not directly concern PharmaNetics, they cannot maintain a claim against PharmaNetics (as opposed to Aventis). But as the Court discussed at length in its September 13 decision, relators have cleared the original source hurdle with regard to the information that forms the basis of their claim. PharmaNetics has cited no authority for the proposition that the original source question is analyzed on a defendant-by-defendant basis, as opposed to a claim-by-claim basis. In other words, assuming (as the Court has concluded) that relators have adequately alleged that they are an original source for the information that forms the basis of their claim, PharmaNetics has offered no basis for the proposition that relators may not sue other defendants claimed to be joint participants in the same fraudulent scheme simply because relators are not the original source of information that directly implicates those

particular participants. Absent such authority, there is no basis for the Court to reconsider its ruling denying PharmaNetics' motion to dismiss. The Court also denies PharmaNetics' alternative motion to strike certain allegations for the same reason discussed with regard to Aventis' similar request.

**3.     Defendants' motions to certify interlocutory appeal**

Both Aventis and PharmaNetics have asked the Court to certify for interlocutory appeal under 28 U.S.C. § 1292(b) its ruling that relators' *qui tam* claims are not deficient under Federal Rule of Civil Procedure 9(b). In ruling, the Court acknowledged the general rule that Rule 9(b) "generally requires a *qui tam* plaintiff to do more than merely charge that the defendants engaged in fraudulent schemes and then conclusively assert that fraudulent claims were submitted to the government. Rather, the relator typically must come forward with evidence linking the allegations of fraud to an actual false claim for payment." *Kennedy,* 2007 WL 2681701, at *7 (citing *United States ex rel. Garst v. Lockheed-Martin Corp.,* 328 F.3d 374, 378 (7th Cir. 2003)). Relators did not identify, in their amended complaint, any specific false claim submitted to the government for off-label prescription of Lovenox. The Court declined, however, to dismiss their *qui tam* claims. In this regard, the Court relied on long-established Seventh Circuit precedent that "the requirements of Rule 9(b) are relaxed when the plaintiff lacks access to all facts necessary to detail his claim" and that "Rule 9(b)'s requirements can be fulfilled by pleading facts on information and belief if they are facts inaccessible to the plaintiff, in which event he has to plead the grounds for his suspicions." *Id.* (internal quotation marks and brackets omitted; citing *Corley v. Rosewood Care Ctr., Inc.,* 142 F.3d 1041, 1051 (7th Cir. 1998); *Emery v. Am. Gen. Fin., Inc.,* 134 F.3d 1321, 1323 (7th Cir. 1988); *Bankers Trust Co. v.*

*Old Republic Ins. Co.,* 959 F.2d 677, 684 (7th Cir. 1992)). This type of situation, the Court stated, "is more likely to arise when, as in this case, the relators' claims are based on fraud allegedly committed against third parties." *Id.* The Court ruled that relators had met the standard for relaxation of Rule 9(b)'s requirements. *Id.*

Before certifying a matter for interlocutory appeal, a court must find that "[its] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). For present purposes, the Court assumes, without deciding, that its ruling on the Rule 9(b) issue involves a "controlling question of law" on certain of relators' claims and that an immediate appeal might advance the ultimate termination of the litigation.

Defendants' request for certification founders on the requirement that there be "substantial ground for difference of opinion" regarding the trial court's ruling on an issue of law. As indicated earlier, the Court relied upon well-established doctrine in the Seventh Circuit regarding the application of Rule 9(b). Defendants cite several False Claims Act cases in support of what appears to be a contention that the Seventh Circuit precedent upon which the Court relied is not applied in *qui tam* cases. But none of the Seventh Circuit decisions that defendants cite so much as hints that Rule 9(b) is applied in False Claims Act cases differently from the way it is applied in other fraud cases. *See United States ex rel. Fowler v. Caremark RX, Inc.,* 496 F.3d 730 (7th Cir. 2007); *United States ex rel. Crews v. NCS Healthcare,* 460 F.3d 853 (7th Cir. 2006); *United States ex rel. Garst v. Lockheed-Martin Corp.,* 328 F.3d 374 (7th Cir. 2003). The alternate means of compliance with Rule 9(b) upon which the Court relied was not

7

rejected in any of those cases; indeed, the relators in those cases did not make on appeal, and thus the Seventh Circuit did not consider, the argument upon which this Court relied in declining to dismiss the complaint in the present case (the Court has reviewed the appeal briefs in each of those cases, which are available on the Seventh Circuit's web site).

Defendants' suggestion that this Court has created a special rule for False Claims Act cases is simply incorrect. Indeed, it is the course that defendants suggest – declining to follow the long-established Seventh Circuit precedent upon which the Court relied – that would result in treating *qui tam* claims differently from other fraud claims with regard to the application of Rule 9(b). In sum, the Seventh Circuit cases upon which defendants rely do not suggest a substantial ground for difference of opinion regarding the Court's application of Rule 9(b).

Similarly, neither of the two cases from other Circuits on which defendants rely most heavily suggests a substantial ground for difference of opinion regarding the Court's application of established Seventh Circuit Rule 9(b) precedent.[1] In *United States ex rel. Russell v. Epic Healthcare Mgmt. Group,* 193 F.3d 304 (5th Cir. 1999), the court determined not to apply the more relaxed alternative method of compliance with Rule 9(b) used in cases in which the plaintiff lacks access to the evidence necessary to make certain allegations with particularity. Though the court's decision says very little about the claim that was at issue in the case, it appears from the brief discussion of the facts that the relator *had access* to the necessary

---

[1] In the other Circuit-level cases defendants cite, the courts did not address the question of relaxation of the Rule 9(b) standard for a *qui tam* relator who lacks access to evidence. *See United States ex rel. Atkins v. McInteer,* 470 F.3d 1350, 1359-60 (11th Cir. 2006); *Sanderson v. HCA-The Healthcare Co.,* 447 F.3d 873, 878 (6th Cir. 2006); *Corsello v. Lincare, Inc.,* 428 F.3d 1008, 1014 (11th Cir. 2005); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.,* 360 F.3d 220, 232 (1st Cir. 2004).

information. Specifically, she had access to it herself when employed by the defendants (though she claimed she could not photocopy the information due to a confidentiality agreement), and the district court found that she had access to the information via the Healthcare Financing Administration. *Id.* at 308. The same is not true here, as the Court will discuss momentarily.

In *United States ex rel. Clausen v. Laboratory Corp. of Am., Inc.,* 290 F.3d 1301 (11th Cir. 2002), unlike in the present case, it was the relator's own employer who was alleged to have made the false claims to the government. *See id.* at 1303. As in *Russell,* the court noted that the relator was "not without avenues" for obtaining the information he would have needed to make a more particularized claim. *Id.* at 1314 n.25. And contrary to the present case, the court concluded that the relator had failed to allege the predicate necessary to support relaxation of Rule 9(b)'s requirements. *See id.*[2]

In other words, neither *Russell* nor *Clausen* directly rejects the legal rule upon which this Court relied in its September 13 decision. And in any event, the present case is materially different from both *Russell* and *Clausen*. In this case, unlike in *Russell* and *Clausen,* there is no question that the relators lacked access prior to suit to the information they would need to identify particular false claims. The claims at issue were submitted to the government not by the relators' former employer – unlike in *Clausen* and, it appears, *Russell* – but rather are claimed to have been submitted by third party medical providers. Defendants have offered no reason to

---

[2] Similarly, in *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah,* 472 F.3d 702, 727 (10th Cir. 2006), cited by defendants, the court acknowledged that the requirements of Rule 9(b) are sometimes relaxed but declined to apply a relaxed standard to the relator's claims because she had failed to set forth the basis for her "information and belief" that false claims had been submitted. The contrary is true in this case, as the Court concluded in its September 13 ruling.

believe that relators possibly could have obtained such specifics, given medical privacy rules, prior to filing their complaint. In short, *Russell* and *Clausen* are not contrary to the Court's decision in this case, and they provide no basis to find a substantial ground for difference of opinion regarding the application of the Seventh Circuit's established precedent concerning Rule 9(b).

Finally, the three cases from this district that defendants mention in the text of their memoranda[3] contain no discussion of Seventh Circuit precedent regarding how a plaintiff who lacks access to information may seek to comply with the requirements of Rule 9(b). *See United States ex rel. Robinson v. Northrop Corp.,* 149 F.R.D. 142, 145 (N.D. Ill.1993) (citing no authority in rejecting the argument that a more lenient standard should apply to a plaintiff who lacks access to information); *United States ex rel. Grant v. Thorek Hosp. and Med. Ctr.,* No. 04 C 8034, 2007 WL 2484333, at *2 (N.D. Ill. Aug. 29, 2007) (citing only *Robinson* on this point); *Peterson v. Comm. Gen. Hosp.,* No. 01 C 50356, 2003 WL 262515, at *3 (N.D. Ill. Feb. 7, 2003) (citing for this point only the Eleventh Circuit's decision in *Clausen,* and also concluding that the relator had failed to comply with the pleading standard needed to seek relaxation of Rule 9(b)'s requirements). To the extent these cases discuss a rationale for requiring identification of specific false claims even though the relator claimed lack of access to such information, they suggest that because the relator stands in the shoes of the government in a *qui tam* case, she should be deemed to have access to any information the government would have – including any allegedly false claims that were submitted. This Court respectfully suggests that this assumes

---

[3] The Court will not separately discuss the other district court cases contained in a lengthy string citation in defendant Aventis' memorandum.

that the capacity in which a relator sues is the equivalent, or should be deemed the equivalent, of access to information – a *non sequitur,* in this Court's view. For these reasons, the Court does not believe that the Northern District of Illinois decisions upon which defendants rely provide a basis for a finding of a substantial ground for difference of opinion regarding application of the Seventh Circuit's Rule 9(b) jurisprudence in this case.

For these reasons, the Court denies defendants' motions to certify its September 13, 2007 decision for interlocutory appeal.

**Conclusion**

For the reasons stated above, the Court denies both defendants' motions for reconsideration or to strike [docket nos. 85, 92] as well as their motions for certification under 28 U.S.C. § 1292(b) [docket nos. 95, 104]. The Court also directs the Clerk to terminate motion number 82, which the Court denied without prejudice on September 27, 2007. The case is set for a status hearing on November 5, 2007 at 9:30 a.m. for the purpose of addressing the scope, sequencing, and timing of discovery. Counsel are directed to confer regarding these topics in advance of the status hearing.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: October 23, 2007