# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel.* | ) | |
| KATY KENNEDY and FRANK MATOS, | ) | |
| THE STATE OF ILLINOIS *ex rel.* KATY | ) | |
| KENNEDY and FRANK A. MATOS, and | ) | |
| KATY KENNEDY, individually, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 03 C 2750 |
| | ) | |
| AVENTIS PHARMACEUTICALS, INC. | ) | |
| and PHARMANETICS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Katy Kennedy and Frank Matos have brought this suit against Aventis Pharmaceuticals,
Inc. and PharmaNetics, Inc. Kennedy and Matos have sued as relators on behalf of the United
States and the State of Illinois under the federal False Claims Act (FCA) and the Illinois
Whistleblower Reward and Protection Act (IWRPA). Kennedy has also brought claims on her
own behalf against Aventis for retaliation under the FCA, the IWRPA, and the Illinois
Whistleblower Act (IWA).

The Court previously dismissed Kennedy's FCA and IWRPA retaliation claims in her
first amended complaint for failure to state a claim, with leave to amend. Kennedy then filed a
second amended complaint, asserting her previously-made FCA and IWRPA retaliation claims
with additional allegations, as well as a new claim under the IWA. Aventis has moved to
dismiss these claims, which are Counts 7, 8, and 9 of the second amended complaint. For the

reasons stated below, the Court dismisses Counts 7 and 8 but declines to dismiss Count 9.

## Background

The case involves Aventis and PharmaNetics' alleged promotion of "off-label" prescription and use of a pharmaceutical product called Lovenox – in other words, promotion of the product for a use other than its FDA-approved use – and allegedly resulting false claims by hospitals and other providers to the federal and Illinois governments for reimbursement via the Medicare and Medicaid programs. The defendants' actions, Kennedy and Matos allege, included marketing of the drug by Aventis sales personnel with off-label clinical studies and materials describing methods for off-label use, training of providers in off-label use, and payment of grants to health care organizations and allegedly excessive fees to speakers to promote off-label use.

With regard to her retaliation claim, Kennedy, who was an Aventis salesperson, alleges that in May 2002, her supervisor, a district sales manager, directed her and other sales personnel to spend all their remaining expense account funds by July 2002 on events that would occur after that date and submit false invoices to the company for reimbursement. 2d Am. Compl. ¶¶ 54-55. Kennedy says she questioned the manager on whether this practice was fraudulent and violated Aventis procedures. *Id.* ¶ 56. In August 2002, Kennedy says, she reported to internal compliance and human resources personnel her concerns about "inappropriate use of company funds." *Id.* ¶¶ 57-58.

Kennedy also alleges that in September-October 2002, she spoke to senior Aventis human resources personnel "about the off-label promotion and marketing of Lovenox" and the inappropriate use of Aventis funds. She says she advised these senior personnel that her district

manager was encouraging her and other sales personnel to promote Lovenox for off-label uses

and that an area sales trainer had instructed her and other representatives in off-label promotion.

Kennedy alleges that she turned over to senior human resources personnel some of the materials

she had been given by her supervisors. *Id.* ¶ 59. Kennedy says that in her discussions with

senior personnel, she told them "that it was wrong to promote off-label and that sales

representatives can only use FDA approved studies to sell on-label for the drug's FDA approved

indications." *Id.* ¶60.

Kennedy further alleges that it was well known by supervisory sales personnel at Aventis

"that Lovenox was widely prescribed to Medicare patients" and "that government sponsored

health care programs would reimburse providers for Lovenox." She says that she "reasonably

believed in good faith that Aventis was committing fraud against the government by its off-label

promotion and sale of Lovenox." *Id.* ¶ 61.

Kennedy says that because of these communications and her refusal to participate in

illegal activities, she was "threatened, harassed, retaliated and discriminated against" by senior

Aventis personnel. *Id.* ¶¶ 63-66. She says that due to the retaliatory actions and harassment by

senior personnel, she "was forced to resign her position with Aventis in February 2004." *Id.* ¶

62.

**Discussion**

**1.     FCA and IWRPA claims (Counts 7 and 8)**

In Counts 7 and 8, Kennedy claims unlawful retaliation in violation of the FCA and the

IWRPA. The FCA provides that "[a]ny employee who is discharged, demoted, suspended,

threatened, harassed, or in any other manner discriminated against in the terms and conditions of

employment by his or her employer because of lawful acts done by the employee on behalf of

the employee or others in furtherance of an action under this section, including investigation for,

initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall

be entitled to all relief necessary to make the employee whole." 31 U.S.C. § 3730(h). The

parallel provision of the IWRPA is worded identically. 740 ILCS 175/4(g).

In its earlier decision, the Court ruled that to state a claim under these provisions,

Kennedy must allege (among other things) that her statements to her superiors put Aventis on

notice that she suspected Aventis was defrauding the government or that she was investigating or

assisting in making a claim under the FCA / IWRPA. *U.S. ex rel. Kennedy v. Aventis Pharms.,

Inc.*, 512 F. Supp. 2d 1158, 1168 (N.D. Ill. 2007). Aventis has adopted this formulation in the

briefs it has filed in support of its current motion. *See* Aventis Mem. at 5; Aventis Reply at 4.

Aventis argues that Kennedy has failed to allege that Aventis was on notice that she

believed Aventis was defrauding the government or that she otherwise was pursuing a *qui tam*

action at the time of the alleged retaliation. Aventis Mem. at 6. It contends that although

Kennedy has alleged that she advised her employer of her views regarding the propriety of the

promotional activities at issue, she does not allege that she advised Aventis that she suspected it

was committing fraud on the government or that she was pursuing a *qui tam* action. This,

Aventis argues, is insufficient to allow Kennedy to pursue a retaliation claim under the FCA or

the IWRPA.

Kennedy's allegations are insufficient under governing law in this Circuit to state a claim

for retaliation under the FCA. To prevail on a claim under section 3730(h), an employee must

show that she was retaliated against because she was engaging in FCA-protected activity.

Kennedy has alleged that she told Aventis that she thought it was acting inappropriately under internal policies and FDA regulations, but that is insufficient. The Seventh Circuit has made it clear that an employee's complaints about internal improprieties or violation of federal regulations do not amount to FCA-protected activity. *See Brandon v. Anesthesia & Pain Mgmt. Assocs., Ltd.*, 277 F.3d 936, 944-45 (7th Cir. 2002); *Luckey v. Baxter Healthcare Corp.*, 183 F.3d 730, 733 (7th Cir. 1999). *Accord, Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005).

Rather, the Seventh Circuit has ruled, an employee must show that she acted in furtherance of an FCA enforcement action (at least one that might be contemplated in the future), that her employer knew she was engaged in protected conduct, and that it discharged her, at least in part, due to her protected conduct. *Brandon*, 277 F.3d at 944. With regard to the second element, *Brandon* indicates that the employer must have realized that it faced the possibility of a *qui tam* action. *Id.* Internal complaints, the court stated, "usually do[ ] not put an employer on notice of potential FCA litigation," *id.* at 945, at least not without more.

Section 3730(h) does, to be sure, protect employees from retaliation for activities preparatory to suit. *See Luckey*, 183 F.3d at 733; *Neal v. Honeywell, Inc.*, 33 F.3d 860, 863-64 (7th Cir. 1994). But Kennedy does not allege, nor can a reasonable inference be drawn from her allegations, that Aventis was aware she was investigating possible false claims. Specifically, there is nothing in Kennedy's complaint suggesting that she communicated to Aventis any awareness or contention that false Medicare or Medicaid claims were being made. In this regard, the Court does not believe it is sufficient that Kennedy has alleged that she was aware, and that Aventis separately was aware, that false claims were being submitted by providers.

5

Without more, the company's alleged independent awareness of the submission of false claims is insufficient to suggest that it believed Kennedy was engaging in FCA-protected activity.

Kennedy's claim, interpreted liberally, could be read to suggest that even though she never suggested to Aventis her awareness of any false claims, the company forced her out because of concern that her complaints might result in the uncovering of such claims. Were the Court writing on a clean slate, it might conclude that such allegations are sufficient to state an FCA retaliation claim. The Seventh Circuit, however, has declined to read section 3730(h) this broadly.

In support of her claim, Kennedy relies on comments by the D.C. Circuit in *U.S. ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 741, 742 (D.C. Cir. 1998). A full reading of that case, however, undermines Kennedy's reliance on it. The court said in *Yesudian* that a plaintiff is not required to show that she knew her investigation could lead to a suit under the FCA and thus need not show that she told or suggested to the employer that she was contemplating such a suit. "What defendant must know," the court said, "is that plaintiff is engaged in protected activity . . . that is, activity that reasonably could lead to a False Claims Act claim." *Id.* at 742. This, Kennedy suggests, is essentially what she has alleged. Yet the court in *Yesudian* went on to state that the employee must show the employer was aware of her FCA-protected activity and that "[m]erely grumbling to the employer about job dissatisfaction or regulatory violations does not satisfy the requirement – just as it does not constitute protected activity in the first place." *Id.* at 743. And earlier in its decision, the court unambiguously stated that to be covered by the FCA, "the plaintiff's investigation must concern 'false or fraudulent' claims." *Id.* at 740. Because Kennedy's allegations cannot be read to suggest that her complaints to superiors had anything to

do with false claims to the government, her FCA claim is legally deficient under governing Seventh Circuit law.

Aventis argues, and Kennedy does not dispute, that the identically-worded anti-retaliation provision of the IWRPA should be interpreted the same way as the FCA in this regard. For this reason, the Court's conclusion that Kennedy has failed to state a retaliation claim under the FCA applies equally to her claim under the IWRPA.

**2.      IWA claim (Count 9)**

Kennedy's IWA claim is, as noted earlier, newly made in her second amended complaint. Under the IWA, which took effect on January 1, 2004, "[a]n employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a State or federal law, rule, or regulation." 740 ILCS 174/20. Under a separate provision of the statute, "[i]f an employer takes any action against an employee in violation of Section 15 or 20, the employee may bring a civil action against the employer for all relief necessary to make the employee whole, including but not limited to" reinstatement, back pay, and compensation for any damages sustained, including litigation costs and attorney's fees. 740 ILCS 174/30.

The IWA does not contain a definition of the word "retaliate." In its motion to dismiss, Aventis argues that the IWA was intended to codify the Illinois common law tort of retaliatory discharge and that consistent with Illinois decisions regarding the contours of that tort, the statute proscribes only discharge of an employee, not other types of retaliation, and thus does not apply to claims of constructive discharge like the one Kennedy has made. *See Hartlein v. Illinois Power Co.*, 151 Ill. 2d 142, 163, 601 N.E.2d 720, 730 (1992) (holding that claim for common law retaliatory discharge does not encompass claims of constructive discharge).

Aventis cites a single Illinois case for the proposition that the IWA was intended to codify the Illinois retaliatory discharge tort, *Sutherland v. Norfolk Southern Ry. Co.*, 356 Ill. App. 3d 620, 826 N.E.2d 1021 (2005). Aventis reads far too much into *Sutherland*. The case concerned a common law claim involving conduct prior to the adoption of the IWA, and thus the court's discussion of the applicable law involved the common law tort, not a statutory claim. The court noted in passing – indeed, in a footnote – that "[t]he 'whistleblower' cause of action has since been codified in the Whistleblower Act." *Id.* at 624 n.4, 826 N.E.2d at 1026 n.4. This can hardly be called a conclusion that the statutory claim is coextensive with the common law tort, particularly when the case did not even involve a claim under the IWA. Indeed, in a later decision, a different district of the Illinois Appellate Court stated that the IWA does not preempt the common law tort, in part because the statute does not cover as broad a range of employee conduct as the common law tort, and in part because it provides greater protections. *Callahan v. Edgewater Care & Rehabilitation Center, Inc.*, 374 Ill. App. 3d 630, 634-35, 872 N.E.2d 551, 571 (2007).

The bigger problem with Aventis' argument is that it is contrary to principles of statutory construction that Illinois courts follow. The statute proscribes "retaliat[ion]," not "retaliatory discharge." Illinois courts (like other courts) regard statutory language as "the best indication of [legislative] intent." *Metzger v. DaRosa*, 209 Ill. 2d 30, 34-35, 805 N.E.2d 1165, 1167 (2004). Statutory language "must be afforded its plain, ordinary, popularly understood meaning." *People ex rel. Sherman v. Cryns*, 203 Ill. 2d 264, 279, 786 N.E.2d 139, 151 (2003). When the language of a statute is unambiguous, it must be applied as written, without resort to other tools of construction. *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 10, 754 N.E.2d 334, 339

(2001).

A corollary of these principles is that a court may not depart from the plain language of a statute "by reading into it exceptions, limitations, or conditions not expressed by the legislature." *Id.* The common meaning of "retaliate" includes all sorts of adverse action other than termination. Reading the statute to apply only to a particular form of retaliation – discharge – would violate these basic principles of Illinois statutory construction.

The Court also notes that although the provision of the IWA describing the relief a prevailing plaintiff may obtain identifies reinstatement and back pay, it specifically says that relief is not "limited to" such remedies. Rather, the statute entitles a prevailing employee "to all relief necessary to make the employee whole." 740 ILCS 174/30. A commonsense reading of this section of the IWA supports the Court's conclusion that the statute's anti-retaliation provision is not limited to cases involving actual discharge.

Aventis also argues that Kennedy has not sufficiently alleged that she actually refused to participate in allegedly illegal activity. But in her complaint, Kennedy alleges exactly that: "Defendant Aventis retaliated against Ms. Kennedy for refusing to participate in activities that would result in a violation of State or Federal laws, rules, or regulations." 2d Am. Compl. ¶ 80. Nothing in federal pleading standards requires her to allege anything more than this to state a claim; in particular, there is no requirement that a plaintiff in an IWA retaliation case plead with particularity exactly what illegal conduct she refused to participate in. Aventis also argues that Kennedy has failed to identify anyone similarly situated who was treated differently. This argument borders on the frivolous as part of a Rule 12(b)(6) motion; Aventis cites no authority, and the Court is aware of none, imposing this as a *pleading* requirement in any sort of

employment discrimination / retaliation case.

## Conclusion

For the reasons stated above, the Court grants Aventis' motion to dismiss in part and denies it in part [docket no. 104]. The Court dismisses Counts 7 and 8 of the second amended complaint for failure to state a claim but denies Aventis' motion as to Count 9. The Court directs Aventis to answer Count 9 by no later than February 21, 2008. The case remains set for a status hearing on March 7, 2008 at 9:30 a.m.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:   February 11, 2008